IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

v.                                                                                  Criminal Action No. 3:15cr71

ANDREW LEE GRANT,

      Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Andrew Lee Grant's Motions for Compassionate Release pursuant to Section 603(b) of the First Step Act (the "Motion"). (ECF Nos. 52, 64.) The United States responded in opposition, (the "Opposition"), (ECF No. 59). Grant did not reply and the time to do so has expired. The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will grant the Motions for Compassionate Release.

## I. Background

On July 14, 2015, Grant pled guilty pled guilty to distribution of heroin. (ECF No. 14.) At sentencing, Grant was determined to be a career offender based on two prior drug convictions in the Circuit Court for the City of Richmond: (1) Possession of Schedule III Drug with Intent to Distribute; and, (2) Distribution of Cocaine. (Presentence Report "PSR" ¶¶ 26, 59, 60; ECF No. 19.) Grant's Schedule III drug offense occurred after police officers arrested him at 3:53pm in the afternoon and found "several white oval pills" in his pocket that "were later identified through MCV Poison Control as Hydrocodone." (*Id.* ¶ 59.) Grant's Distribution of Cocaine offense involved a confidential source purchasing from Grant 0.141 grams of crack cocaine. (*Id.*

¶ 60.) In light of this career offender designation, after an adjustment for acceptance of responsibility, Grant had a Total Offense Level of 29 and was a Criminal History Category of VI, resulting in an advisory Guidelines range of 151 to 188 months. (*Id.* ¶¶ 130, 131.) Prior to sentencing, Counsel for Grant argued for a downward variance because, absent the career offender designation, Counsel claimed Grant would have faced a Guidelines range of 63 to 78 months of imprisonment. (ECF No. 21.)

At sentencing, the Court found that the career offender designation inordinately skewed Grant's sentencing range. (ECF No. 32, at 12–13.) The Court sentenced him to 120 months of imprisonment, 31 months below the low end of the 151 to 188 months Guideline's range, and three years of supervised release. (*Id.*)

Grant is currently housed at USP Allenwood Medium FCI. The Bureau of Prisons ("BOP") states that Grant will be released on February 4, 2024. *See* Bureau of Prisons, *Fed. Inmate Locator*, https://www.bop.gov/inmateloc/.

On April 14, 2020, Grant "requested a reduction in sentence from the warden of FCI Allenwood." (Mot. 3, ECF No. 58-1.) On May 5, 2020, the Warden denied that request. (*Id.*) Grant appealed, and the BOP denied his appeal on August 17, 2020. (*Id.*)

On July 16, 2020, Grant filed a *pro se* Motion for Compassionate Release. (ECF No. 52.) Thereafter, the Court appointed Grant with counsel for assistance in filing the instant Motion for Compassionate Release. (ECF No. 53.) In the Motion, Grant describes the current public health crisis caused by COVID-19. (*See e.g.*, Mot. 8–10, ECF No. 64.) Grant, currently forty-one-years old, contends that he "has asthma, high blood pressure, type 2 diabetes, and obesity – all conditions identified by the CDC to carry the risk of severe complications and death if combined with COVID-19." (*Id.* 10.) The PSR similarly recognized prior to sentencing that Grant

suffered from a heart murmur, a history of bronchitis, and asthma attacks. (PSR ¶ 106.) Grant avers that upon his release, "[h]e will live with his fiancé Tasha Winston and try to get back to work at the Tyson chicken plant if the Court allows." (Mot. 15.) Grant further argues that he Court should consider granting compassionate release because a 65-month sentence "would not be out of the mainstream of sentences imposed on defendants with similar guidelines," citing statistics regarding sentences for drug offenses. (*Id.* 16.)

The United States opposes Grant's request for compassionate release, arguing that his "sparse" release plan does not reduce his risk of contracting COVID-19, that he would not have "unrestricted access to his private healthcare providers," and that his release "will also increase the risk of exposure for [Grant], his family, and anyone with whom they come into contact." (Opp'n 10, ECF No. 59.) The United States observes that Grant's criminal history spanned twenty years, and that "[i]n the instant case [Grant] resumed selling drugs within about two months of being released from prison on a 2013 distribution of cocaine conviction in Richmond Circuit Court." (*Id.* 12.) The United States argues that Grant has not "shown that his prison facility is at heightened risk of a coronavirus outbreak." (*Id.* 9.) The United States asserts that while Grant has serious health conditions, his offense conduct and criminal history do not support granting him compassionate release. (*Id.* 12–13.)

On November 18, 2020, Counsel for Grant filed a Status Update, informing the Court of a significant COVID-19 outbreak at FCI Allenwood. (Nov. 18, 2020 Status Update; ECF No. 62.) "At the time Mr. Grant filed his motion, only . . . 127 tests had been administered at FCI Allenwood, and only one inmate had tested positive. No[w], the facility has administered 687 tests, of which 126 were positive." (*Id.* 2.) "Today, November 18, 2020, BOP reports that there are thirty-one (31) active infections among inmates, and one among staff." (*Id.* 1.) Since

3

Counsel for Grant filed that Status Update less than one week ago, COVID-19 cases at FCI Allenwood Medium have risen to 157. *See* Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/. The United States did not file a response to the Status Update.

## II. Legal Standard: Compassionate Release Under the First Step Act of 2018

In 2018, Congress enacted the First Step Act to provide incarcerated individuals the opportunity to directly petition the courts for compassionate release under 18 U.S.C. § 3582(c)(1)(A).[1] Prior to the First Step Act in 2018, the BOP had the sole authority to petition the court for sentence modifications on compassionate release grounds. *Coleman v. United States*, No. 4:17-cr-69, 2020 WL 3039123, at *1 (E.D. Va. June 4, 2020). Following enactment of the First Step Act, criminal defendants may petition courts on their own initiative to modify their sentences if "extraordinary and compelling reasons warrant such a reduction." *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Before granting a reduction, courts must consider the factors set forth in 18 U.S.C. § 3553(a), *see* 18 U.S.C. § 3582(c)(1)(A), and evidence of rehabilitation and

---

[1] Section 3582(c)(1)(A) states:

> The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case—(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

other post-conviction conduct.  *See United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)).

### A.     Exhaustion of Administrative Remedies

Although the Court generally cannot "modify a term of imprisonment once it has been imposed," the defendant may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. . . ."  18 U.S.C. § 3582(c)(1)(A).  "Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court."  *Casey v. United States*, No. 4:18-cr-4, 2020 WL 2297184, at *1 (E.D. Va. May 6, 2020).

The court may waive the exhaustion requirement, however, in certain circumstances.  *United States v. Jones*, No. 3:11-cr-249, ECF No. 47, at *2–3 (E.D. Va. Apr. 3, 2020) (Lauck, J.) Courts may waive exhaustion if: "pursuing an administrative remedy would be futile[,]" "'exhaustion via the agency review process would result in inadequate relief[,]' or 'pursuit of agency review would subject the petitioner to undue prejudice.'"  *United States v. Robinson*, No. 3:10cr261, 2020 WL 4041436, at *3 (E.D. Va. July 17, 2020) (Lauck, J.) (quoting *Poulios v. United States*, No. 2:09-cr-109, 2020 WL 1922775, at *1 (E.D. Va. Apr. 21, 2020) (Jackson, J.)).

Throughout the country, courts have found the coronavirus pandemic, combined with a vulnerable defendant with underlying health conditions, implicates all three exceptions justifying a waiver of the exhaustion requirement.  *See United States v. Zukerman*, 451 F. Supp. 3d 329, 332–33 (S.D.N.Y. 2020) (holding that defendant's elderly age and serious health conditions

warrant a waiver of exhaustion requirements because of the ongoing risk of infection while incarcerated); *United States v. Perez*, 451 F. Supp. 3d 288, 293 (S.D.N.Y. 2020) (waiving the exhaustion requirement because exhaustion would be futile as defendant would not see thirty days lapse before his release date).

### B. Courts Must Find Extraordinary and Compelling Reasons Justifying Compassionate Release

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The United States Sentencing Commission further defines "extraordinary and compelling reasons."[2] U.S.S.G. § 1B1.13, n.1; *see United States v. Kalivretenos*, No. 1:15-cr-00073, ECF No. 109, at *4 (E.D. Va. May 21, 2020). The Sentencing Commission identifies four instructive categories of extraordinary and compelling reasons that allow for a sentence to be modified: the petitioner's medical condition, age, family circumstances, and other reasons. U.S.S.G. § 1B1.13, n.1 (A)–(D).[3] However, a petitioner's rehabilitation alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t).

---

[2] The United States Court of Appeals for the Fourth Circuit recently explained in an unpublished decision that "[t]he Sentencing Commission's policy statements . . . control the disposition of [compassionate release motions], and not the BOP program statements, based on Congress' statutory directives." *United States v. Taylor*, No. 20-6575, 2020 WL 5412762, at *1 (4th Cir. Sept. 9, 2020) (citing 18 U.S.C. § 3582(c)(1)(A); 28 U.S.C. § 994(t)).

[3] The United States Sentencing Guideline § 1B1.13 provides that:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
> (1) (A) extraordinary and compelling reasons warrant the reduction; or

As a result of the coronavirus outbreak, "courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, No. 3:19-cr-112, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020) (citing *United States v. Dungee*, No. 7:15-cr-0005, 2020 WL 1666470, at *2 (W.D. Va. Apr. 4, 2020); *United States v. Edwards*, 6:17-cr-0003, 2020 WL 1650406, at *5 (W.D. Va. Apr. 2, 2020)). Several courts have held that "the fear of contracting a communicable disease" alone cannot be considered an "extraordinary and compelling reason" to justify a sentence modification. *Id.* (citing *United States v. Clark*, No. 17--85-SDD-RLB, 2020 WL 1557397, at *4 (M.D. La. Apr. 1, 2020) (internal quotation marks and emphasis omitted)).

### C. Courts Must Weigh the Statutory Sentencing Factors Before Granting Compassionate Release

Even after finding a sufficient "extraordinary and compelling reason" for compassionate release, the Court must then consider the § 3553(a) factors and any relevant postconviction conduct before modifying a defendant's sentence. 18 U.S.C. § 3582(c)(1)(A). The Court must weigh factors including "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The Court also must consider "the need for the sentence imposed to promote respect for the law . . . ; to afford adequate deterrence to criminal conduct; . . . [and] to protect the public from further crimes of the defendant." 18

---

(B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
(3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

7

U.S.C. § 3553(a)(2).  The statutory sentencing factors direct the Court to consider the kinds of sentences available and the sentencing range established for the offense.  18 U.S.C. § 3553(a)(4).

The Guidelines policy statement concerning compassionate release further instructs Courts to consider the 18 U.S.C. § 3142(g) factors.  U.S.S.G. § 1B1.13.  These include "the nature and circumstances of the offense charged . . . ; the history and characteristics of the person . . . ; [and,] the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C. § 3142(g).

### III.  Analysis

After due consideration, the Court will grant the Motions.  The Court first determines that Grant has sufficiently exhausted his administrative remedies.  (*See* Opp'n 3 (recognizing Grant has exhausted his administrative remedies).)

Next, the Court finds that Grant's health conditions raise serious concerns about his well-being should he contract COVID-19 while incarcerated, making him eligible for compassionate release consideration.  In its Opposition, the United States concedes that Grant "has articulated an 'extraordinary and compelling' reason" for compassionate release eligibility.  (Opp'n 9.)  And, since Grant filed his Motion, the BOP has reported a significant COVID-19 outbreak at FCI Allenwood, the facility where Grant is housed.  (Nov. 18, 2020 Status Update; ECF No. 62.)  Because Grant's medical conditions entitle him to compassionate release consideration, the Court turns to statutory sentencing factors and the relevant Guidelines policy statement.

After considering the relevant statutory sentencing factors and the policy statement, the Court will grant the Motions.  Pursuant to USSG § 1B1.13, the Court must consider whether extraordinary and compelling reasons warrant the reduction, whether the defendant is a danger to the safety of any other person or to the community as provided in § 3142(g), and whether the

reduction is consistent with the policy statement.  Upon review, Grant's criminal history and underlying convictions, while concerning, demonstrate that he does not present a serious threat to the public because he has committed largely nonviolent drug and driving offenses.  While twenty years ago he was convicted of brandishing a firearm, Grant's prior drug convictions, which drove his career offender designation, involved small quantities of illegal drugs: specifically, hydrocodone pills and 0.141 grams of crack cocaine.  Grant's criminal history reflects that of a drug addict, comprised almost entirely of nonviolent conduct, except for that mentioned above and an assault and battery conviction fourteen years ago, in 2006.  (PSR ¶ 47.)  While Grant has violated repeatedly, he has also shown progress and rehabilitation throughout his current prison term.  The Sentencing Court recognized these circumstances when it imposed on Grant a sentence below the advisory Guidelines range.  Looking to the § 3142(g) factors, although Grant has committed repeated drug offenses, the Court determines that he does not present a danger to the community after serving more than five years in prison for his drug offense.

      Turning to the § 3553(a) factors, Grant has served 66 months, or roughly 55%, of his 120 month sentence.  Under such circumstances, compassionate release affords adequate deterrence to Grant's criminal conduct.  The Court observes that among the drug-distribution cases related to Grant's case, the Court imposed sentences varying from 15 months' imprisonment to 151 months' imprisonment.  (PSR ¶¶ 7–11.)  Grant's sentence of 120 months largely reflects his career offender designation, which drove his advisory Guidelines range to 151 to 188 months.  By granting Grant compassionate release, Grant will have served 66 months, or 5.5 years, in prison for distributing heroin.  Additionally, upon release Grant will begin to serve a three year supervised release term for his offense.  As stated in the October 16, 2015 Judgment, such

9

release shall include participation "in a program approved by the United States Probation Office for substance abuse, which program may include residential treatment and testing to determine if defendant has reverted to the use of drugs or alcohol." (J. 4, ECF No. 25.) This adequately deters criminal conduct.

Grant further contends that the Court should grant his Motion because he "has made demonstrable efforts while in prison to improve himself" and has had good conduct for several years. (Mot. 14–15.) In *United States v. Martin*, the Fourth Circuit vacated and remanded the District Court's denial of both defendants' motions to reduce sentence because the District Court failed to address any new mitigating evidence when denying the motions. 916 F.3d 397–98 (4th Cir. 2019). The Fourth Circuit explained that if an individual is eligible for a sentence reduction, the District Court must give weight to the person's "past transgressions" as well as "the multitude of redemptive measures that [the person] has taken." *See id.* at 397.

Here, Grant has committed five disciplinary infractions during his time in federal detention, consisting primarily of minor violations. (ECF No. 58–2.) In 2016, Grant received a sanction for fighting, but Counsel for Grant avers that Grant did not act as the aggressor in that instance. (Mot. 14.) Moreover, none of his disciplinary infractions caused him to lose good time credit. His disciplinary record while in prison supports granting compassionate release.

Since his conviction, Grant has also engaged in additional rehabilitative efforts. Grant "complet[ed] 194 hours of academic work and 130 hours of hands-on practical work, and [has] participat[ed] since 2015 in pre-release alcoholics and narcotics anonymous." (Mot. 15.) Grant attached to his *pro se* Motion numerous certificates showing his work in drug abuse education, writing courses, and psychology. (ECF No. 52.) Grant has engaged in rehabilitative programs and displays progress in his rehabilitation. This Court commends him for doing so.

In sum, the Court concludes that the record before it justifies Grant's early release from federal imprisonment.

## IV. Conclusion

For the reasons explained above, the Court will grant the Motion. (ECF Nos. 52, 64.)

/s/
M. Hannah Lauck
United States District Judge

Date: November 24, 2020
Richmond, Virginia

11